This time we'll hear healthbridge versus the national labor relations board. Good morning. May it please the court. My name is Brian Gershengorn and I'm appearing on behalf of the petitioner's healthbridge management LLC and the six subcontracting centers. Petitioner's appeal boils down to one main point. The board's decision was outcome determinative and required the board to squeeze the facts of this case into a number of ill-fitting legal theories and ignored any facts that didn't support their desired outcome. First, the board chose to ignore its own and second circuit precedent in regards to the joint employer issue. Without analyzing the traditional factors of a joint employer status. For example, who hired, fired, disciplined, provided benefits for, and exercised immediate control and supervision over the employees. And instead, the board found dispositive and determinative one fact, that the subcontracting centers entered into a collective bargaining agreement with the union. Second, the board incorrectly determined that the subcontracting centers never terminated their employment relationship with their employees. And simply ignored what the subcontracting centers did to inform the union of their subcontracting arrangement. Finally, former acting chairman Miscamara in his concurrence, which by the way acknowledged that the majority reached the wrong conclusion on both the joint employer and the terminating employment relationship issue. And his view was adopted by the board. Correct, it was. However, the former acting chairman acknowledged in his footnote that their joint employer argument, the board's joint employer argument, would be quote unquote dead on arrival at the second circuit because it didn't follow second circuit precedent under AT&T and Clinton's ditch. Only one theory is necessary. That's correct, your honor. And. But the concurrence relied on the alter ego principle, right? It relied on the fact that there was a circumvention, was what former acting chairman Miscamara. Isn't that how the alter ego principle works? You reconstitute yourself as a different firm or a different company. And then you rehire all the same people you had before to do just the same work that they did before in the same business with the same clients essentially. Yeah. And that you hire them without the union. And in so holding that, Miscamara relied on a number of cases which we maintain are distinguishable. They are cases that deal with repudiating the collective bargaining agreement or refusing to bargain with the union. Here, what the subcontracting centers did was rehired these employees who were HSC employees at the time and simply took them back as new hires. There was nothing in the party's collectively bargained agreement that precluded the subcontracting centers from rehiring these employees as new hires. Can I go back to the joint employer issue though? Sure. For a second, and that is, there seems to be some disagreement on the board about the processing of grievances during this one year period that I think the majority pointed to processing three grievances in the ordinary course as if Healthbridge maintained its employer status. And then there were two employees, I think, that transferred to different positions within the three homes. How does that not show there is some evidence that they remain joint employers if they're doing that? Well, Your Honor, the subcontracting agreement only dealt with the housekeeping and the laundry employees. The contracts still govern the rest of the- But were these three employees those types of employees? Well, the first employee, Petion, he filed his grievance before the subcontracting arrangement even occurred. And so just like- So it was still processed after it did occur? Completely, yes, Your Honor, that's correct. And just like- What about the other two now? What did they do? Were they laundry and maintenance people? The other one was also a CNA, I believe, and a laundry housekeeper. And she was looking to use seniority in the CNA function. So again, still a position that was covered by the party's collective bargaining agreement. Who issued her paychecks during the one year period? The Senator, Your Honor. The Senator did, not HSG? Well, for her CNA position, Your Honor, yeah, when she was a CNA. Did she get any paychecks from HSC during that one year period? I would have- Was she used at time clocks that were installed by HSC during that period? When she was, if she was employed as a housekeeping and laundry employee during the subcontracting period, that is correct, Your Honor. There was a time clock that was installed by HSG for the subcontracting agreement. But to go back to your question, Your Honor, nothing precludes this center from processing grievances under the contract. Much like if an employee was no longer there, even though in Petion's case, the issue arose while he was working but before the subcontract. The center would still process the grievance under the collective bargaining agreement. Why would they if they're no longer their employees? Well, if the grievance arose during his tenure, we would still have to process the grievance. So this is, again, leftover grievance? It would have been, yes, Your Honor. But none of that addresses the over- The transfers to the other jobs, though, that those two employees, that occurred, right? They went from HSG employees back to being Health Bridge employees during that period, right? Do they keep their seniority, for example? They don't, Your Honor. Not once we- They did not. Once the centers rehired the employees, the employees- I'm talking about during the one year term. You know what I'm talking about. During the one year term, Your Honor. It was mentioned by both opinions in the NLRB. They kept their seniority, Your Honor, and that was established in the letter that the subcontracting center has even sent to the union, saying HSG was going to honor the seniority. Okay, thank you. Now, when Health Bridge, as it were, rehired these people, was it or was it not subject to the CBA? Was their employment subject to the CBA? Once they were rehired, Your Honor, their employment was, in fact, subject to the CBA. We did not repudiate or fail to address the new hires under the CBA. They were being hired back in as housekeeper and laundry positions, which were covered by the party's collective bargaining agreement. Was there any reason ever articulated for this transaction other than terminating their seniority? Well, Your Honor, there is no- In the record. There is nothing in the record, Your Honor, that addressed why this had occurred. It was ruled by the ALJ to be, in fact, temporary. Ms. Camara acknowledges that in his concurrence. But there's nothing in the party's collective bargaining agreement that precluded the subcontracting centers from ending the subcontracting relationship and then taking the employees back as new hires. In fact, the seniority provision specifically speaks to this. Article 9A says that seniority is the length of time that an employee has been continuously employed in any bargaining unit by the center. And Article 9B, as a follow-up to that, says that employee seniority shall be retroactive to the date of the employee's most recent hire date. The record contains no account or explanation by your client for the extraordinary circumstance of allowing all of its housekeeping and laundry employees to be hired by somebody else for 15 months and then bringing them back again. But there's one obvious reason for it, and that's to shed their seniority and to be able to pay them 30% less per hour. That is certainly one reason an employer would do that if the employer could get away with it. And since there's no other explanation offered, isn't it clear that that is the reason? Well, I would say no to that, Your Honor. I do- I understand you have to say no, but I don't understand what your next sentence would be. The only other thing I would add to that, Your Honor, is that within the party's, and I see my time's up, if you don't mind that I finish. By all means, do that. The party's collective bargaining agreement, the subcontracting provision itself does not preclude the subcontracting centers from rehiring the employees as new hires. If the union had wanted to address how these employees would be treated, if and when a subcontracting arrangement ended and they were brought back to the centers, that could have been bargained for. There's no law that the board points to besides the cases that Ms. Gamara cites through the Golden State Warrior line of cases that deal with- In effect, looked at from the point of view of the employee, what's the difference between setting up an alter ego and then rehiring everybody without seniority, and maybe without the union, and having this arrangement in which you basically transfer them to somebody else and then transfer them back again. It's like laundering employees. I understand what the court is saying. I would go back to the same answer, which is the contract didn't preclude it, and this is not along the line of cases of a repudiation of the collective bargaining agreement. The employees were still taken back and subject to the terms and conditions of the collective bargaining agreement. Your client didn't negotiate with the union about whether their wages would be reduced to starting wages without any seniority bumps. There was nothing, that's correct, but there was nothing in the- Union would be interested in that. But there was nothing in the subcontracting provision of the collective bargaining agreement that precluded the subcontracting centers from taking them back as new hires, and our position is if the union had wanted that, they could have bargained for that. They kind of did, didn't they? Section 9F says that no bargaining unit work shall be subcontracted unless the subcontractor agrees in advance to retain, basically, seniority. And then 9B3 lists specific ways in which seniority can be lost, which does not include kind of the out to subcontractor and back to us loop, if you will. Right, and our response to that, Your Honor, is that 9A addresses that issue where it says that the seniority shall be defined as the length of time an employee has been continuously employed by the center. And in this instance, the center was no longer employing them. But if the subcontractor is required by the collective bargaining agreement to maintain their seniority, and it's not, rehiring them is not a basis for losing seniority, what is the argument that the collective bargaining agreement doesn't prohibit this? Well, the collective bargaining agreement does dictate what Your Honor said, and that's what the subcontracting centers did once they subcontracted to HSC. They said that the seniority was maintained. What the contract doesn't speak to is when the employees in this instance were hired back and the subcontracting arrangement had ended. The contract is simply silent on that, Your Honor, and that's why we took them back as new hires. This would work even if the subcontracting to HSC was for one month. Arguably, that would be true as well, Your Honor. It's the same thing under the contract. That's not, I mean, this was a 15 month arrangement, but yes. That would be pretty tempting, wouldn't it, for an employer to basically reduce the seniority of the employees and cut their wages? It could be, in that example, Your Honor. I think that that's something that the employer and the union would have bargained for under the agreement. Thank you. Thank you, Your Honors. Thank you, may it please the court. Eric Weitz on behalf of the National Labor Relations Board. I'd like to begin just by taking a step back and noting what this case involves, which is Healthbridge's decision to formalistically reclassify its housekeeping laundry employees. Some of whom have 20 years or more of seniority accrued. Overnight as probationary new hires, and in doing so, cutting some of their wages by more than 30%, by throwing them off their health insurance, by throwing some of their families off health insurance because probationary employees were not entitled to that and other benefits under the collective bargaining agreement. And all along, the employer Healthbridge has provided no legitimate explanation for why it did so. And the question on those facts for the court in reviewing the board's decision is whether the board reasonably found that that was a violation of Healthbridge's statutory duty to bargain in good faith with the union over changes to its employees' terms of employment, including modifying these contractual benefits. And although this case involves three separate independently sufficient bases for the board's decision. And as a result, the board's decision in the briefing is somewhat complex. At heart, the issue before the court is fairly straightforward as the board notes. First, under what we can refer to as acting chairman, Ms. Gamera's reasoning, which the board adopted, and which as we point out in the brief is largely conceded by the employer. That under established law, an employer cannot utilize these kind of short term operational changes to opportunistically circumvent its bargaining obligations. So your honor, to go to one of your previous questions, the board did not specifically rely on alter ego finding, but it analogized to alter ego cases. because this case is actually easier than an alter ego case because- Why is it easier than an alter ego case? Well, your honor, in an alter ego context, there's a requirement that the board needs to find a bad intent, essentially, because you have a separate corporate entity and you're finding that it was established as a sham. And as a result, it's bound by the collective bargaining agreement. This is even easier because it's the exact same employer, it simply resumed being the employer after a short period of time. So the board does not even need to find bad intent to find a violation here. And those are all of the cases that are cited in the board's decision in the brief. For example, involving relocations of an employer's operations or a relatively short term shutdown, which again is more difficult. Because when you have a shutdown, the work actually ceases for a period of time. Whereas here, the employees experience no interruption of their same day to day work. We also, contrary to the employer's arguments in his brief, cite cases that specifically involved temporary subcontracts. For example, the F&A food sales case, which was a board decision enforced by the 10th circuit. And which involved a 15 month subcontract. And when the subcontract ended, and the original employer resumed operations, the board and the 10th circuit held that the employer was still bound by the existing contract. And as a result, it could not ignore the employee's contractual seniority recall rights. In addition, as has been discussed somewhat in questioning, the board made a finding, a fact here, that the employer had no purpose for doing any of this other than to get out from these contractual obligations. And the employer has still not offered any explanation. The board drew an uncontested adverse inference from Healthbridge's refusal to call any Healthbridge witnesses. The board also relied on the fact that there was unrebutted testimony from employees who said that, essentially from the start of this temporary subcontract, employees were told that the payroll would eventually be going back to Healthbridge. And so again, this is not an alter ego case where the board needed to find bad intent. But the board found, and it's essentially undisputed, that the employer was acting with bad intent because its only purpose was to cut the employee's seniority-based wages and benefits. Is it a joint employer case? Well, yes, your honor. So the board relied on three independent theories, which the court can rely on any one of them, sufficient to enforce the board's unfair labor practice finding. One of those theories was a joint employer finding. What are all three? You've got alter ego, joint employer, and how do you characterize the third? Yes, so the first one, your honor, is analogous to alter ego, which is the short-term operational change. The second, in the order that we briefed it, is the board's finding that the employment relationship and, excuse me, temporarily going back to the first one. The first one is distinct because the court does not need to find that there was an employment relationship during the temporary subcontract. So under the first theory, even if it's assumed that Healthbridge temporarily ceased being an employer, it would still be a violation under that precedent. And now turning to the second theory, the board found that the employment relationship, for purposes of the act, never actually terminated by analogy to common law principles and consideration of common law principles in the common law of agency. Because as the board explained, the employees continued to perform the exact same work as they always did. The only thing that occurred from their point of view was at one point, they were informed that there had been a payroll. I want to ask you a question about that second category, but can you just tell me what the third theory is? Yes, I apologize, your honor. The third theory is the joint employer finding. You said that was the second one. The second one is a finding, it's separate from joint employer, that the board found, even setting aside HSG status, Healthbridge never ceased being the employer during this temporary subcontract. And the third is that there was also a joint employer relationship. So even assuming that the employees became HSG employees, HSG was a joint employer with Healthbridge. So it's- Okay, so let me ask you a question about those second two categories. And that is the acting chair pointed out that Healthbridge, during the one year period, had no effect on hiring, firing, discipline, supervision, or direction of those two types of employees. And in fact, had them fill out all the new forms that you'd fill out when you joined and got a new job, and their benefits plans even took over. Is that all true? No, your honor, that's not the case. What Healthbridge did not do was to have continuing supervision of these terms of employment. But all throughout the duration of the temporary subcontract, Healthbridge mandated the parameters of all of the terms that you just listed. So for example, Healthbridge required HSG to adopt the entire workforce. Healthbridge required HSG to adopt the contractual employment protections. So although HSG was responsible for day-to-day supervision of, for example, disciplining employees or granting sick leave or granting leave, HSG was required to do so within the parameters of the collective bargaining agreement between the union and Healthbridge. And those terms were dictated to HSG by Healthbridge. So for example, when Healthbridge argues in its brief that the board was relying on a single factor, that's not the case. Under this court's precedent, one factor that's considered in a joint employer analysis is whether the putative joint employer participated in collective bargaining between a union and a subcontractor, but that's not at issue here. What's at issue here is because of a collective bargaining relationship with the union, Healthbridge mandated virtually all of the employee's terms and conditions of employment and the parameters of it. That's what your adversary is calling the single condition. That is to say, we are required in any subcontract to get an assurance from the subcontracting company, from the outside company, that it complied with the CBA. That's the single condition. And wouldn't it be rather problematic if every time that were done, good faith, bad faith, every time it was done, it were deemed that you had a joint employer? Well, to the first part of your question, your honor, I would disagree that it's a single factor, because it's a single motivation for the employer, but the effect is that Healthbridge is controlling numerous factors, virtually every factor that this court has listed. Through the CBA. Well, it's not. If you require somebody to adopt and be governed by the CBA, then it is the CBA that dictates all these things. But HSG, your honor, was not party to the collective bargaining agreement. The reason that HSG had to comply with all of these different terms of employment is because Healthbridge was mandating it for the duration of the subcontract. And Healthbridge was required to do that under the terms of its own CBA. That's correct, your honor, and to go to the second part of your previous question, the board went out of its way to clarify that it was not finding or holding that anytime you have this type of contractual arrangement that there's a joint employer relationship. The board was very careful to say that it was relying on the specific facts here, including the fact, which is somewhat unusual, that here you had a temporary subcontracting period, which is intended to be temporary from the start, and at the end of which, the original employer simply resumed its role. So if you had a situation, a normal subcontract, where an employer was saying, we don't want to be in the housekeeping and laundry business anymore, and we want to subcontract these services out going forward permanently, which is the usual subcontracting situation. That might be a very different factual picture that the board would be confronted with. I think what is unique here is that this was a relatively brief, temporary window. It occurred entirely within the life of the collective bargaining agreement. That's a distinct issue. The joint employer principle is based on the idea that Healthbridge required HSG to comply with, to be governed by the CBA, and that's what the CBA says, and a lot of collective bargaining agreements say that, so that in effect, any time you subcontract, you could end up still on the hook as the employer. Because you are, through the CBA, requiring dozens of compliances in terms of employment by the company that takes the subcontract. Yeah, and I fully understand Your Honor's concern, but again, I just reiterate that the board was very careful to say that's not what it was finding. And it relied on the unique facts here, including the temporary status and including the fact that Healthbridge essentially continued to act as an employer during this relatively brief temporary subcontracting period. For example, in processing all these grievances, which I see I'm over time, but if Your Honors are interested in the three grievances that the board relied on, I could clarify some previous questions that arose. First of all, all three grievances were filed after HSG had allegedly become the employer. The first one involving employees- Involved events that predated the subcontract. One of them arguably did, Your Honor. Franz Petian applied to transfer to the maintenance department several days before the subcontract. But he did not file a grievance until he was allegedly an HSG employee. And that grievance was entirely processed with no involvement by HSG after the temporary subcontract. The second employee, Claudette Parks Hill, was a per diem employee on both payrolls. So she was in fact receiving paychecks from both Healthbridge and HSG. But what's significant is the reason she had a grievance during the temporary subcontract is because her guaranteed part-time hours with HSG were eliminated. And under the contract, Article 9 of the contract, when there is what's essentially termed a layoff of guaranteed hours, an employee then has a contractual right to bump another employee in another department. So as a result of what is essentially a layoff by HSG, Ms. Parks Hill filed a grievance directly- Basically also involved departments of Healthbridge other than the housekeeping and laundry department. Absolutely, and she was granted- That falls in between two stools. So that you can understand why Healthbridge would be involved in that, because Healthbridge, given her election, would have to demote or fire somebody who was not subject to the subcontract. Absolutely, Your Honor, and it's entirely understandable why Healthbridge was involved. So why does that suggest in any way that Healthbridge was remaining the employer? Because, Your Honor, the board did not find this was determinative. But I think as the board found this as evidence that Healthbridge continued to treat these employees as part of an integrated unit. And continued to act as a essentially unified employer of all the departments. And I would add that Healthbridge argues that when these employees were transferring, they were only being quote unquote rehired into Healthbridge. And that they had remaining contractual rights vis-a-vis Healthbridge, even though they're HSG employees. But if that were the case, it would only tend to support the board's ultimate finding, which is that when the subcontract ended, and these employees were again quote unquote rehired by Healthbridge, they should have retained their accrued seniority as is required under Article 9B of the contract, which lists five scenarios where seniority is lost, none of which is involved here, none of which was alleged to be involved here. Thank you. We'll hear from Bob. Thank you, Your Honors. In regards to the joint employer question, I would simply refer the court to its decision in Clinton's ditch. It deals with a pretty factually analogous situation in which the court determined that simply being party to a subcontract arrangement does not make the subcontractor and the putative employer joint employers. More specifically, yes, the HSG needed to abide by the CBA. That's exactly what the subcontracting provision stated. But just because the subcontractor needed to abide by the CBA, that's not akin to the same as hiring and firing, just because there's a just cause standard in the contract, that's not the same as administering discipline, and those criteria are the exact criteria that the circuit has looked to in Clinton Ditch and AT&T and others. The only other point I would raise is in regards to the alter ego sham transaction argument. The ALJ and the board adopts this, didn't find that the full service subcontracts had the deliberate purpose of circumventing the CBAs. Only that they considered these to be temporary in nature. And nowhere do they state that the full service subcontracts were a sham transaction. And Ms. Gamara specifically found that the full service subcontracts were in fact lawful. Thank you. Thank you, your honors. Thank you both. We'll reserve decision.